IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENEESHA AUBOUG, *et al*, <br><br> *Plaintiffs*, <br><br> v. <br><br> EYRE BUS SERVICE, INC. *et al*, <br><br> *Defendants*. | Civil Action No. 2:20-cv-389 <br><br> Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Husband and wife Plaintiffs, Reneesha and Yves Auboug, filed suit in late 2019 in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that Mrs. Auboug suffered inhalation of "toxic fumes" on an Eyre bus due to Defendants' negligence and incurred injuries as a result. Mr. Auboug asserts a loss of consortium claim.[1] (ECF No. 1-1). The case was removed to this Court. (ECF No. 1). Plaintiffs' counsel subsequently withdrew. (ECF Nos. 13, 14). Plaintiffs proceeded *pro se*, although they sought and obtained multiple extensions of deadlines based on the representation that they had contacted counsel, who would enter an appearance on their behalf. Counsel never appeared and the case proceeded through the closure of discovery on June 21, 2021. (ECF Nos. 24, 40).

Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") filed a timely Motion for Summary Judgment, Concise Statement of Material Facts, and Brief in

---

[1] Counts II and IV were brought by Mrs. Auboug on behalf of her minor daughter, K.A., and they alleged that she suffered inhalation of "toxic fumes" on the Eyre bus due to Defendants' negligence, and that she incurred injuries as a result. Because Mrs. Auboug was unable to secure counsel for her claims or those of her daughter, and because a parent may not represent the interests of a child *pro se*, the Court dismissed K.A.'s claims without prejudice. (ECF No. 37).

1

Support thereof. (ECF Nos. 45, 46, 47). Defendant Eyre Bus Service, Inc., d/b/a Eyre Tour & Travel, Eyre Tour & Travel Ltd., ("Eyre") also filed a timely Motion for Summary Judgment, Concise Statement of Material Facts, and Brief in Support thereof. (ECF Nos. 48, 49, 50). Pursuant to the Court's Order, Plaintiffs' Responses were due by August 5, 2021. (ECF No. 40). On August 19, 2021, when Plaintiffs failed to respond, the Court issued an Order to Show Cause giving Plaintiffs until September 9, 2021 to respond. (ECF No. 51). Plaintiffs requested a two-week extension, which the Court granted on September 9, 2021. (ECF No. 54). In so doing, the Court cautioned Plaintiffs that "no further extensions of time will be granted." (ECF No. 54). Plaintiffs' Show Cause Response was due by September 23, 2021. (ECF No. 54). Mrs. Auboug's Motion to Extend Time and Response to Court's Order to Show Cause (ECF No. 57) addressed the merits of Defendants' pending motions and was deemed by the Court to be her Response to Defendants' Motions for Summary Judgment. (ECF Nos. 45, 48). Likewise, Mr. Auboug's response to the Court's Order to Show Cause was deemed by the Court to be his Response to Defendants' Motions for Summary Judgment. (ECF Nos. 45, 48). For the reasons set forth below, Defendants' motions will be granted.

## I. FACTUAL BACKGROUND

Mr. and Mrs. Auboug and their minor child, K.A., were traveling by rail on the return leg of a multi-destination trip with their church. On August 1, 2017, Amtrak experienced a train derailment along the rail line that Plaintiffs were scheduled to travel. Amtrak provided alternative transportation to the travelers in the form of three buses. Ticketed passengers could choose their own bus and seats. Plaintiffs and their child boarded an Eyre bus. Mrs. Auboug sat

in a window seat near the back of the bus, and Mr. Auboug sat beside her in the aisle seat. Their daughter sat across the aisle. (ECF No. 50, ¶¶ 1-5); (ECF No. 57, ¶¶ 7, 8, 16).[2]

Approximately one hour into the trip, Mrs. Auboug noticed a smell that made her sleepy. She alerted no one to the smell, and fell asleep for some time. She awoke when the bus stopped in Breezewood, Pennsylvania, where she ate. When reboarding the bus, Mrs. Auboug noticed a different smell – which she asserts was similar to the scent of gasoline or diesel. Once again, she told no one about the smell. Some unspecified time later, the driver pulled the bus over and inspected an exterior compartment of the bus near Mrs. Auboug's seat. He then informed the passengers that he turned a vent off and gave them the option to board either of the other two buses for the remainder of the trip. Instead of switching buses, Mrs. and Mr. Auboug switched seats. (ECF No. 50, ¶¶ 5-11); (ECF No. 57, ¶¶ 18-19, 25, 30, 31, 33).

After switching seats, Mr. Auboug's eyes began to burn, Mrs. Auboug's nose and upper lip burned, and she began to have chest pain. None of the other dozen passengers complained of medical issues, except for one passenger who had a headache. Mrs. Auboug later moved across the aisle with her daughter, and Mr. Auboug returned to his original seat. After relocating, Mrs.

---

[2] According to the Local Rules of this Court, undisputed facts "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." L.Cv.R. 56(E). Typically, this Local Rule is strictly enforced. *See, e.g., Janokowski v. Demand*, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008); *GNC Franchising LLC v. Kahn*, 2008 WL 612749, at *1 (W.D. Pa. Mar. 3, 2008). The Court, however, is mindful that Plaintiffs are now proceeding *pro se*, and it acknowledges that *pro se* submissions are to be construed liberally. *Lynn v. Sec'y, Dep't*, 431 F. App'x 147, 150 (3d Cir. 2011). In recognition of this duty, and despite Plaintiffs' lack of a specific refutation of the Defendants' Concise Statements of Material Facts, the Court will consider portions of their Responses (ECF Nos. 45, 48) as disputing portions of Defendants' Concise Statements of Material Facts. *See Pondexter v. Allegheny Cnty. Housing Auth.*, 2012 WL 3611225, at *1 n.2 (W.D. Pa. Aug. 21, 2012). Thus, Defendants' Concise Statements of Material Facts will not be deemed undisputed, although many facts with in it are indeed undisputed. The Court will consider the facts as set forth by all parties, and make reasonable inferences where it is appropriate.

Auboug experienced chest pain and difficulty breathing. Noticing Mrs. Auboug's distress, the driver pulled off at the New Stanton exit. (ECF No. 50, ¶¶ 13-18); (ECF No. 57, ¶¶ 22, 33, 34, 35, 38 39).

Mrs. Auboug was transported by ambulance to Westmoreland Hospital where she was kept overnight for observation. (ECF No. 50, ¶ 20); (ECF No. 57, ¶¶ 52, 56-60, 63). At Westmoreland Hospital, Mrs. Auboug's conditions were not attributed by medical personnel as resulting from fume inhalation. (ECF No. 50, ¶ 21).

After her release from the hospital, Mr. and Mrs. Auboug and K.A. stayed in a hotel room for the night of August 6, 2017. The next day, they rented a car to drive to Greater Pittsburgh International Airport, and they flew back to Missouri. The car and flight were funded by the church trip organizers. (ECF No. 50, ¶ 22); (ECF No. 57, ¶¶ 72, 73).

On August 8, 2017, Mrs. Auboug went to the emergency room at Christian Northeast Hospital in Missouri complaining of dizziness, chest pain, headaches and issues with walking and speaking. She was admitted for ten days and diagnosed with fibromyalgia. No Christian Northeast Hospital medical personnel attributed her injuries or symptoms to what she experienced on the bus–i.e., fume inhalation. (ECF No. 50, ¶¶ 23-25); (ECF No. 57, ¶¶ 74-81). In fact, Mrs. Auboug conceded during her deposition that no one at Christian Northeast Hospital advised her that her symptoms were the result of being exposed to fumes on the bus. (ECF No. 50, ¶ 26).

After Mrs. Auboug's discharge from the hospital, she felt unable to work and allegedly received a note from her primary care physician stating she could not work for an unspecified period of time. No such note was contained in her medical records. Several months after the bus incident, Mrs. Auboug was let go from her part-time job as a small farm outreach worker. She

applied for long-term disability through a private insurance company and received it due to medical issues unrelated to the bus incident. Approximately two years after the bus incident, Mrs. Auboug's long-term disability benefits were terminated because it was determined that she could physically maintain employment. (ECF No. 50, ¶¶ 27-30); (ECF No. 57, ¶¶ 94, 95).

Mrs. Auboug brings claims of negligence against Amtrak (Count I) and Eyre (Count III), and Mr. Auboug brings a loss of consortium claim against both Defendants (Count V).[3]

## II. STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

When considering a motion for summary judgment, the traditional flexibility toward *pro se* pleadings does not require the Court to indulge evidentiary deficiencies. *See Mala v. Crown*

---

[3] The Court exercises federal-question jurisdiction over the claims against Amtrak, a federally-chartered corporation in which the United States owns the majority of shares. *See* 28 U.S.C. §§ 1331, 1349; *see also Hollus v. AMTRAK Ne. Corridor*, 937 F. Supp. 1110, 1113 (D.N.J. 1996) ("Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak."). The Court exercises supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(a).

*Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) (citing *Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000) (indicating that *pro se* litigants still must present at least affidavits to avoid summary judgment)). At summary judgment, a *pro se* plaintiff is not exempt from her burden of providing some affirmative evidence, i.e., not just mere allegations, to establish a *prima facie case*, and to show that there is a genuine dispute for trial. *See Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her *prima facie* case") (citation and quotation omitted)); *Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (upholding a district court's grant of summary judgment against a *pro se* plaintiff for his failure to submit expert testimony in a denial of medical services suit); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

### III. ANALYSIS

Mrs. Auboug's claim of negligence against Amtrak (Count I) alleges that as a result of its negligence, she "suffered and will continue to suffer from sickness and health problems including but not limited to chronic dyspnea." (ECF No. 1-1, p. 27). As to Mrs. Auboug's claim of negligence against Eyre (Count III), she states that as a direct and proximate cause of Eyre's negligence, she "suffered and/or will suffer sickness and health problems including but not limited to demyelination." (ECF No. 1-1, p. 29). In seeking summary judgment in their favor, Defendants contend that Mrs. Auboug has completely failed to adduce any evidence to support her claims. The Court agrees. It will grant summary judgment in favor of Defendants as to all remaining claims.

A.     **Choice of Law.**

Although not specifically explored by the parties, the first issue that the Court must determine in adjudicating Defendants' motions as to Mrs. Auboug's negligence claims is the applicable law.  *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d. Cir. 1996) ("Before we address the tort issues in his case, we must first decide which state's law applies."). "In choosing which law applies, a federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Id.* (citing *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988)). Pennsylvania has abandoned the common law *lex loci delicti* rule for choice of law in tort cases.  It applies a modified form of the analysis set forth in the Restatement (Second) of Conflicts of Law. The Pennsylvania choice-of-law analysis consists of two parts.  First, the Court must look to see whether a false conflict exists.  Then, if there is no false conflict, the Court determines which state has the greater interest in the application of its law.  *See Cipolla v. Shaposka*, 267 A.2d 854 (Pa. 1970); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir. 1991).  A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey,* 932 F.2d at 187. "If two [or more] jurisdictions' laws are the same then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (emphasis in original).  "Thus, the first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws." *Id.* (emphasis in original).

In this case, the laws of four jurisdictions are implicated: Pennsylvania (where the bus was traveling at the time of the alleged fume discharge and injury); Missouri (Plaintiffs' home

state); Maryland (Eyre's home state); and Washington D.C. (Amtrak's home jurisdiction). The Court must first look to their respective laws of negligence to determine whether an actual conflict exists and, if so, whether the conflict is false or true. If a true conflict exists, the Court must balance the relevant interests of the implicated jurisdictions.

Pennsylvania law requires the standard four elements–duty, breach, causation, and damages–to establish negligence. *See Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006). Negligence is "the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009) (internal citations and quotation marks omitted). Under Missouri law, "[i]n any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 720 (Mo. App. W.D. 2015) (citations omitted). Under Maryland law, "a properly pleaded claim of negligence includes four elements. The plaintiff must show (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the defendant's breach of the duty proximately caused the loss or injury suffered by the plaintiff, and (4) that the plaintiff suffered actual loss or injury." *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1049 (Md. App. 2011) (citation omitted). Finally, the law of Washington D.C. is the same as the other jurisdictions with respect to negligence. *Erie Insurance Co. v. W.M. Barr & Company, Inc.*, 523 F. Supp. 3d. 1, 6-7 (D. D.C. 2021).

Consequently, the Court finds that there is no conflict in the laws of the four implicated jurisdictions vis-à-vis the general elements of a claim for negligence.[4]

Because the laws of Pennsylvania, Missouri, Maryland and Washington D.C. are the same with respect to the claims raised by Plaintiffs, there is no conflict—real or false. Because there is no actual conflict, the Court may apply the law of the forum—Pennsylvania. *Hammersmith*, 480 F.3d at 229.

### B. Mrs. Auboug has failed to adduce sufficient facts to support her claims of negligence at Counts I and III.

As explained above, to prevail on her negligence claims, Mrs. Auboug must prove: (1) the existence of a legal duty requiring a certain standard of conduct; (2) breach of that duty by Defendants; (3) a causal connection between Defendants' breach and her injury; and (4) actual loss or damages. It is black-letter law that in adjudicating Defendants' Motions for Summary Judgment, the Court must read the record in the light most favorable to Plaintiffs and give them the benefit of every reasonable inference from the facts of record. However, "in order to defeat a properly supported motion for summary judgment, a plaintiff cannot merely restate the allegations of his complaint, nor can he rely on self-serving conclusions unsupported by specific facts in the record. Plaintiff must point to concrete evidence in the record which supports each essential element of his case." *Tozzi v. Union R. Co.*, 722 F. Supp. 1236, 1239 (W.D. Pa. 1989) (internal citation omitted). Here, an element-by-element examination of Mrs. Auboug's

---

[4] In addition to the general elements of a negligence claim—which are essentially ubiquitous where the common law prevails—the Court examined the duty owed to a passenger by a common carrier. Here, too, the laws of the potentially implicated jurisdictions are coterminous—with each imposing upon common carrier the highest duty of care. *See Connolly v. Philadelphia Transportation Co.*, 216 A.2d 60, 62 (Pa. 1966); *Trader v. Blanz*, 937 S.W.2d 325, 327 (Mo. App. W.D. 1996); *Washington Metro. Area Transit Auth. v. Seymour*, 874 A.2d 973, 977 (Md. 2005); *Washington Metro. Area Transit Auth. v. Jeanty*, 718 A.2d 172, 175-76 (D.C. App. 1998). There is, therefore, no conflict on this more focused examination of the law governing the parties' relationship in this case.

negligence claims demonstrates that she cannot point to concrete evidence supporting those claims. As such, summary judgment in favor of Defendants is warranted.

### 1. Duty

The existence of a duty owed by a defendant is the threshold question in a negligence action, and it is generally a question of law. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010). Mrs. Auboug's claims for negligence will not survive Defendants' motions if the law does not impose an affirmative duty on them. *See id.*; *see also Burton v. Terry*, 592 A.2d 1380, 1383 (Pa. Cmwlth. 1991) ("The determination of what duty, if any, a defendant owes to [a plaintiff] is a question of law."). "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002) (citation omitted).

As explained above, the law recognizes that a common carrier owes not only a duty, but a heightened duty of care to its passengers. Thus, there is no question that Eyre had a duty to Plaintiffs, as the alleged fume exposure happened while they were passengers on its bus.

There is no question that when Plaintiffs were riding Amtrak's train, it owed them a duty of care. Whether Amtrak had a duty to protect Plaintiffs from injury on the bus operated by Eyre requires a deeper examination. The Complaint alleges negligence, and therefore an actionable breach of duty, relating to Amtrak's "failure to provide a safe alternative for passenger transportation following its train's derailment," failure to perform "appropriate safety inspections" on the bus, failure to warn of the dangerous conditions on the bus, and failure to refund Plaintiffs' money to allow them to choose their own substitute transportation. (ECF No.

1-1, pp. 25-26). Underlying each of these clams is the supposition that Amtrak had a duty, upon its inability to transport Plaintiffs by rail, to provide alternative transportation that would be safe.

Although not addressed and adopted by the Pennsylvania Supreme Court, Restatement (Second) of Torts § 428 is instructive to the question of Amtrak's duty in the situation presented here. In fact, federal district courts have predicted that the Pennsylvania Supreme Court would adopt Section 428 if faced with the issue. *See Longo v. Pa. Elec. Co.*, 618 F. Supp. 87, 90-91 (W.D. Pa. 1985); *Wilson v. IESI Corp.*, 444 F. Supp. 2d 298, 309-11 (M.D. Pa. 2006). It states:

> An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by a public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.

Restatement (Second) of Torts § 428 (1965). Previous cases have applied Section 428 to situations where common carriers have subcontracted others to perform their duties and the acts of the subcontractors caused harm to third parties. *See e.g. Longo*, 618 F. Supp. At 90-91 (applying Pennsylvania law); *Wilson*, 444 F. Supp. 2d at 309-11 (same); *Venuto v. Robinson*, 118 F.2d 679, 682-83 (3d. Cir. 1941) (applying New Jersey law).

In this case, due to a train derailment, Amtrak hired Eyre to transport its ticketed passengers and employees whose travel plans were impeded. Amtrak made the arrangements with Eyre for transportation of the previously ticketed rail passengers. The passengers did not make any arrangements themselves. Eyre is, therefore, properly characterized as a subcontractor of Amtrak. Accordingly, it had a duty to its passengers that continued while the passengers were transported on the Eyre bus. This duty can reasonably be found to include those claimed by Plaintiffs (to provide a safe alternative for passenger transportation following Eyre's train's

11

derailment, to perform safety inspections on the bus, and to warn of dangerous conditions on the bus.).

### 2. Breach of Duty

As a common carrier, Eyre owes a duty of safety to its bus passengers. Indeed, as explained above, common carriers owe a heightened duty of care. Eyre nevertheless contends that Mrs. Auboug has not set forth sufficient facts to submit to a jury the issue of whether it breached its duty of care to her. (ECF No. 49, pp. 6-7). It contends that Mrs. Auboug has "introduced no evidence as to what was causing the odor, where it was coming from, what it was, how it could be harmful let alone whether it was the result of any negligence or any action or inaction of Defendants." (ECF No. 49, p. 6). Mrs. Auboug responds by reciting the amount of time she was exposed to "toxic fumes," and contending that Eyre did not follow proper procedures and alert the authorities when she inhaled "toxic fumes" on the bus. (ECF No. 57).

There is no question that a release of noxious fumes into the passenger compartment of a bus would be strongly indicative, at least, of a breach of the carrier's duty of care to its passengers. Yet, Mrs. Auboug has come forth with no concrete evidence as to what actually occurred on the bus. At the summary judgment stage, Mrs. Auboug has to adduce more than a mere scintilla of evidence in her favor, and she cannot simply reassert factually unsupported allegations contained in her pleadings. "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party" who "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 322 (3d Cir. 2016) (citation omitted). Mrs. Auboug needed to "present more than just bare assertions, conclusory allegations or suspicions to show the

12

existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

Mrs. Auboug has failed to adduce sufficient evidence of a breach of duty to submit to a jury. Her claim is supported only by her own testimony, which is unclear and not sufficient to create a genuine issue of material fact. For example, Mrs. Auboug testified that there were actually two distinct smells that occurred at different times during the trip and which had different effects upon her. (ECF No. 50-1, p. 8) ("First of all there were different odors."). She testified that the first odor, which occurred before the stop in Breezewood, made her "sleepy" and burned her nose. (*Id.*). She was not able to offer any description of the first smell. (*Id.* at 9-10) (Q: Can you just describe to me what it is that you smelled? A: I really don't—I really could not identify the smell. The first smell I couldn't identify it.). She said that the second smell "smelled like gas or diesel." (*Id.* at 10). It was after experiencing the second smell that Mrs. Auboug claims to have suffered the distress that led to her leaving the bus and being taken to the hospital. Mrs. Auboug has not been able to adduce any evidence as to the nature and source of the two odors upon which she bases her claim. She hopes to proceed to a jury based only on testimony that she experienced harm from two different smells and that these smells must indicate the discharge of noxious fumes into the passenger compartment of the bus. Even reading the record in the light most favorable to Mrs. Auboug, she has not made a sufficient showing to overcome summary judgment. Quite simply, she failed to adduce factual evidence that would allow a reasonable jury to find Eyre breached any duty of care.

Mrs. Auboug has also failed to come forward with evidence that Amtrak breached its duty to her—for largely the same reasons she has failed to identify a breach of duty by Eyre. As explained above, she has not adduced evidence of what actually happened on the bus that

allegedly caused her injury. She offers only that she was exposed to two separate and distinct smells. Further, she has not adduced any evidence to support a finding that Amtrak violated its duty of care in selecting Eyre as an alternative transportation or that it failed to exercise appropriate oversight, if any, over Eyre. Mrs. Auboug has offered nothing that would allow a reasonable jury to find that Amtrak breached a duty of care to her.

### 3. Causation

Furthermore, *assuming arguendo* that Mrs. Auboug has adduced sufficient evidence that Eyre and/or Amtrak breached their duties, both Defendants contend that Mrs. Auboug failed to come forth with evidence of a causal connection between their alleged conduct and her alleged injuries. (ECF No. 45-1, pp. 4-6; ECF No. 79, pp. 5-6; ECF No. 60, pp. 3-5; ECF No. 61. pp. 2-3). "To establish the causation element in a negligence claim, a plaintiff must allege that the defendant's breach of his legal duty was both the proximate and actual cause of injury." *Lopez v. CSX Transp., Inc.*, 269 F. Supp. 3d 668, 673 (W.D. Pa. 2017) (citations omitted). "Actual causation is present when the alleged injury would not have occurred but for a certain act or presence of a condition . . . while proximate causation requires that the defendant's wrongful act be a substantial factor in bringing about the plaintiff's harm." *Id.* (citations omitted).

"A proximate, or legal cause, is defined as a substantial contributing factor in bringing about the harm in question. Although there can be more than one proximate cause, all factual (but for) causes are not necessarily proximate causes." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 492 (3d Cir. 1985) (citation omitted).

> The following considerations are deemed important under the Restatement's "substantial factor" test to determine proximate cause: (1) the number of factors other than the actor's conduct that contributed to producing the harm and the extent of their contribution; (2) whether the actor's conduct created a force or series of forces that were in continuous and active operation up to the time of the harm, or created a situation harmless unless acted upon by other forces for which

the actor is not responsible; and (3) the lapse of time between the actor's conduct and the harm.

*Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 759 (E.D. Pa. 2016), *aff'd sub nom. Heeter v. Honeywell Int'l Inc.*, 706 F. App'x 63 (3d Cir. 2017). "[Q]uestions of proximate cause are typically reserved for the jury." *Lopez*, 269 F. Supp. 3d at 673-74 (quoting *Vanesko v. Marina Dist. Dev. Co., LLC*, 38 F. Supp. 3d 535, 543 (E.D. Pa. 2014)); *see also David v. Broadway Maint. Corp.*, 451 F. Supp. 877, 882 (E.D. Pa. 1978) ("Although a jury might well reach the contrary conclusion on either or both of these issues, that is plainly no warrant for resolving the proximate cause issue as a matter of law. So long as a jury reasonably could find that the defendant's conduct proximately caused the plaintiff's injuries, the plaintiff is entitled to a jury determination on that issue."). A court may determine proximate cause as a matter of law where it finds that a jury could not reasonably differ on the issue. *Lopez*, 269 F. Supp. 3d at 674; *see also Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1287-88 (Pa. Super. 2005) (stating that proximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury.).

As explained above, no evidence was adduced in discovery as to what caused the odor on the bus, where it came from, what it was, and how it could be harmful. More significantly, no evidence was adduced showing that what occurred on the bus caused Mrs. Auboug's alleged injuries. As Defendants accurately note, despite being given an extension of time, Mrs. Auboug has not obtained a single expert report. At her deposition, Mrs. Auboug acknowledged that no treating physician stated that her alleged injuries were caused by the incident on the Eyre bus. Furthermore, in her Response to Defendants' motions, she admits that no medical records attribute any of her medical problems to what occurred on the Eyre bus. (ECF No. 57, p. 4). While Mrs. Auboug's records indicate a diagnosis of fibromyalgia, none of them contain any

indication that the condition arose because of or was made worse by the alleged incident on the bus. Again, not a single note from a single doctor attributed any harm to the incident on the bus.

Mrs. Auboug counters that the lack of medical evidence tying her condition to exposure of fumes on the bus and the silence of her medical records on the same is evidence of a conspiracy of silence among her treating physicians. Mrs. Auboug believes that all of the doctors who have treated her since the bus incident have lied and chosen not to diagnose her symptoms and medical conditions as being caused by the "toxic fumes" on the Eyre bus. (ECF No. 57, pp. 4, 14-21).

The Court has carefully reviewed all of the exhibits Mrs. Auboug mailed to it,[5] which she contends "show a causal connection with chemical inhalation and its connection to myocardial and additional injuries. A medical expert will determine this to be the case." (ECF No. 57, p. 14). The Court is no medical expert, but it is readily apparent that the exhibits proffered by Mrs. Auboug, particularly her medical records, do not establish a causal link. There is nothing in the materials submitted to the Court which could support a finding of the requisite causation of her health condition by the fume discharge on the bus.

---

[5] Mrs. Auboug mailed a flash drive to the Court. On it are various folders containing documents marked as exhibits with no set numbering pattern, all of which the Court could access except for Exhibits 2.1 and 3. Exhibits 4, 5, 6.1, 6.2, 6.3, 7, 8 and 14 are reproductions of pleadings in this case. There is video footage from August 15, 2017, capturing what the Court believes to be Mrs. Auboug walking across a room at Christian Northeast Hospital. Other exhibits consist of various information about the Amtrak derailment, Eyre bus trip information (e.g., flyers, passenger lists, seating chart), and Mrs. Auboug's hotel and airport expenditures (*see* Exhibits 9.1., 9.2, 9.3, 9.4, 10, 11, 12, 18.2). Mrs. Auboug included as exhibits her own timelines and/or notes regarding her alleged misdiagnoses as Exhibits 13, 17.2, 17.3, 18.3, 23.3. She marked as exhibits ambulance and medical records, medical insurance information, her correspondence with medical facilities and/or agencies about her medical conditions, and a letter terminating her employment (*see* Exhibits 16, 17.1, 18, 19-21.1, 23.1, 23.2, 23.4, 23.5, 24, 25.1, 26, 27, 28, 28.1, and 29). Defendants have not commented on the accuracy or inaccuracy of these documents, and neither can the Court. Regardless, none of the exhibits offered by Mrs. Auboug constitute sufficient factual evidence to overcome Defendants' motions.

Defendants also argue that Mrs. Auboug cannot proceed to a jury without obtaining an expert opinion because it is not readily apparent to lay persons that what allegedly occurred on the bus (of which she has adduced no evidence) caused her subsequent medical conditions and alleged injuries particularly where no medical documentation supports her theory of relief. In other words, Mrs. Auboug has failed to offer an expert opinion that explains the link between her alleged injuries/medical conditions and what allegedly occurred on the Eyre bus. *See Smith v. German*, 253 A.2d 107, 108 (Pa. 1969) ("Where there is no obvious causal relationship, unequivocal medical testimony is necessary to establish the causal connection." (citation omitted)). The Court afforded Mrs. Auboug every opportunity to secure an expert opinion in support of her claims. She failed to do so. As it stands, there is no evidence of causation in the record before the Court. As such, there is no genuine dispute of material fact as to causation, and no reasonable jury could find in favor of Mrs. Auboug as to Counts I and III. Summary judgment will be entered in favor of Defendants as to these counts.

C.  **Mr. Auboug's loss of consortium claim (Count V) fails.**

Because Counts I and III do not survive summary judgment, Mr. Auboug's loss of consortium claim, Count V, also fails. This is so because "[a]ny action for loss of consortium is derivative, depending for its viability upon the substantive merit of the injured party's claims." *See Schroeder v. Ear, Nose & Throat Assocs. of Lehigh Valley, Inc.*, 557 A.2d 21, 22 (Pa. Super. 1989) (citing *Boarts v. McCord*, 511 A.2d 204 (Pa. Super. 1986)); *Sutcliffe v. Bernese*, No. 4:19-cv-00317, 2019 WL 3776560, at *3 (M.D. Pa. Aug. 12, 2019) (same). Summary judgment will be granted in favor of Defendants as to Count V.

## IV. CONCLUSION

Defendants' motions will be granted and summary judgment will be entered in favor of Defendants and against Plaintiffs as to the remaining claims–Counts I, III, and V. Orders of Court will follow.

BY THE COURT:

*/s/ William S. Stickman IV*
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_____12/14/21_____
Dated